UNITED STATES of America,
Plaintiff,

v.

Lawrence DIAMOND and Robert L. Gilman and Hattie Gilman, doing business as Republic Textile Equipment Company, Defendants.

United States District Court
S. D. New York.

June 11, 1956.

Paul W. Williams, U. S. Atty., for the S. D. of New York, New York City, for plaintiff. Arthur B. Kramer, Asst. U. S. Atty., New York City, of counsel.

Greenman, Shea & Zimet, New York City, for defendants. Philip Zimet, Rob-

ert H. Haines, Bernard Bressler, New York City, of counsel.

DIMOCK, District Judge.

By this action the United States seeks to collect income taxes payable by Edgewater Dyeing and Finishing Company (hereinafter referred to as "Edgewater") a Pennsylvania corporation. The action is brought against alleged transferees of Edgewater's assets. Edgewater is not named as a defendant.

The matter now before me is a motion by the transferees to dismiss the amended complaint on the ground that it shows on its face that the claim is time barred.

The complaint alleges that the transferees did not pay full consideration for the transferred assets, that the deficiency exceeded the amount of the income tax due and that the transfer rendered Edgewater insolvent. It is further alleged that the transfers were made with the intent of hindering, delaying and defrauding the United States in the collection of the income taxes and that the transferees knew of the indebtedness therefor.

There are three theories on which the United States might succeed in the absence of a time bar:

1. The transferees might be held personally liable for Edgewater's income taxes to the extent that the value of the transferred assets exceeded the consideration paid. Phillips v. Commissioner, 283 U.S. 589, 592, 51 S.Ct. 608, 75 L.Ed. 1289, citing United States v. McHatton, D.C.D.Mont., 266 F. 602.

2. A trust might be impressed upon the assets insofar as gratuitously transferred, or their proceeds, for the payment of Edgewater's income taxes. United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984.

3. The transferees might be declared to hold the transferred assets subject to a lien in the amount of Edgewater's income taxes. United States v. Spreckels, D.C.N.D.Cal.S.D., 50 F.Supp. 789.

The chronology is as follows:

| | |
|---|---|
| June 14, 1946 | Edgewater filed its return. |
| August 16, 1946 | Assessment against Edgewater. |
| August 19, 1946 | Collector received assessment list. |
| August 22, 1946 | Demand for payment made. |
| February 20, 1947 | Notice of tax lien filed in the United States District Court. |
| February 24, 1947 | Notice of tax lien filed in County Court. |
| November 7, 1947 | Additional assessment against Edgewater. |
| November 10, 1947 | Collector received assessment list. |
| November 14, 1947 | Demand for payment made. |
| May 28, 1948 | Notice of tax lien filed in United States District Court. |
| May 28, 1948 | Notice of tax lien filed in County Court. |
| August 15, 1952 | Action begun against Edgewater in United States District Court for Eastern District of Pennsylvania. |
| December 2, 1955 | This action begun. |

Section 311(a) of the Internal Revenue Code of 1939, here applicable, provides that "The amounts of the following liabilities [including the 'liability at law or in equity, of a transferee of property of a taxpayer, in respect of the tax

* * * imposed upon the taxpayer'] shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this chapter * * *."

The limitations in the case of deficiencies in taxes, as distinguished from the limitations in the case of liabilities of transferees, are set forth in section 275. The general rule is contained in subdivision (a) to the effect that income taxes "shall be assessed within three years after the return was filed, and no proceeding in court without assessment for the collection of such taxes shall be begun after the expiration of such period."

■ Thus an assessment or suit against a taxpayer for the collection of income taxes must be made or begun within three years after the return was filed. Accordingly such an assessment or suit against a transferee must be made or begun within a like period unless there is a different provision made in the remainder of section 311. That section, in subdivision (b), does, however, make a different provision for assessments against transferees. They must be made, as respects an initial transferee, "within one year after the expiration of the period of limitation for assessment against the taxpayer". Thus an assessment must be made against a transferee within four years after the filing of the return. This leaves open the question whether a suit against a transferee to recover the tax must be brought within three years or within four years but that is immaterial here since this suit was not brought within four years. It is thus plain that a suit, under the first theory, upon the personal liability of the transferees for Edgewater's income tax would be barred.

■ I now pass to the second theory upon which the United States might succeed in the absence of a time bar, i. e. that a trust might be impressed upon the transferred assets or their proceeds. Section 276(c) provides that "[w]here

the assessment * * * has been made within the period of limitation, properly applicable thereto, such tax may be collected * * * by a proceeding in court, but only if begun * * * within six years after the assessment of the tax * * *." Where, as here, an assessment has been made against a transferor, an action to impress a trust upon property in the hands of the transferee must be begun within six years of the assessment. United States v. Updike, 281 U.S. 489, 50 S.Ct. 367, 74 L.Ed. 984, supra. This action was not brought within that period and is thus barred insofar as it seeks to impress a trust.

■ That leaves the third theory, i. e., that the transferees might be declared to hold the transferred assets subject to a lien. Section 3670 provides that, if the taxpayer does not pay after demand, the amount of the tax "shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." Section 3671 provides that "the lien shall arise at the time the assessment list was received by the collector and shall continue until the liability for such amount is satisfied or becomes unenforceable by reason of lapse of time".

The question here is, therefore, whether the liability for the tax has become unenforceable by reason of lapse of time. As appears in the above chronology, on August 15, 1952, an action was brought in the United States District Court for the Eastern District of Pennsylvania against Edgewater to recover the amount of the tax. This action was brought "within six years after the assessment of the tax" as required by section 276(c) above referred to. It was therefore timely. As long as it pends the liability for the amount of the tax will not "become unenforceable by reason of lapse of time" and the lien will continue.

■ It is argued that, while the liability for the amount of the tax has not become unenforceable against the transferor, it has become unenforceable against the transferees. That is imma-

terial. The lien originated as a lien upon the transferor's property for the transferor's debt. Unlike the first and second theories on which the United States might succeed against the transferees, this third theory does not involve liability of the transferees either individually or as constructive trustees. This third theory is merely that the transferees have received property subject to a lien. As long as they hold that property it can be taken from them to satisfy the lien but, once it passes from their possession, the United States must look to some other theory to collect anything from them. The lien does not depend upon any liability of the transferees so, as long as the liability of the transferor subsists, the lien may be enforced on transferred property in the hands of the transferees. United States v. Spreckels, D.C.N.D.Cal.S.D., 50 F.Supp. 789, supra.

Thus, insofar as there is transferred property, in specie, in the hands of defendant transferees, the action to enforce a lien thereon is timely.

▮ I am not sure, however, that the United States has a valid claim for the enforcement of a lien under section 3671. It is provided in section 3672(a) that "[s]uch lien shall not be valid as against any mortgagee, pledgee, purchaser, or judgment creditor until notice thereof has been filed by the collector" in accordance with any state law providing for such filing and in the office of the clerk of the United States district court for the district where the property is situated. Unless the notices have been filed before a transfer, the lien of the United States is not superior to the interest of the purchaser even though the purchaser had prior notice of the Government's tax claim. See United States v. Beaver Run Coal Co., 3 Cir., 99 F.2d 610.

▮ Here there is an allegation of the filing of the necessary notices but it is not clear that they were filed before the transfer. Indeed the allegation is that the transfer took place "subsequent to the time that the Collector received the assessment lists" leaving the permissible inference that the transfer took place before the filing of the notices. I cannot indulge in that inference, however, but must construe the pleading con amore under the rule of Dioguardi v. Durning, 2 Cir., 139 F.2d 774. I will therefore leave that question for the trial. Nor will I prejudge the question whether, even if it appeared that the transfer predated the filing of the notices, the fact that the consideration for the transfer was inadequate would give rise to rights under section 3671 which the United States would not otherwise possess. See National Refining Co. v. United States, 8 Cir., 160 F.2d 951.

The motion to dismiss the complaint is denied.