UNITED STATES of America,
v.
WEST TEXAS STATE BANK, Appellee.
No. 21914.

United States Court of Appeals
Fifth Circuit.
March 3, 1966.

Charles D. Cabaniss, Asst. U. S. Atty., Dallas, Tex., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Barefoot Sanders, U. S. Atty., Dallas, Tex., Joseph M. Howard, Burton Berkley, Attys., Dept. of Justice, Louis F. Oberdorfer, Asst. Atty. Gen., Joseph Kovner, Atty., Dept. of Justice, Washington, D. C., for appellant.

Arch B. Gilbert, Brooks, Tarlton, Wilson & Gilbert, Fort Worth, Tex., for appellee.

Before HUTCHESON, RIVES and GEWIN, Circuit Judges.

GEWIN, Circuit Judge:

The primary question raised on this appeal is whether a state statute of limi-

tations can bar a suit brought by the United States as a third party beneficiary to enforce a contract wherein one party agreed to pay all the federal income taxes for which another might become liable.

During the first half of 1955, appellee, West Texas State Bank (Bank), made a number of loans to Bellaire Pipeline Contractors (Bellaire), a Texas corporation. Later in that year the Bank brought suit against Bellaire to recover, among other things, the unpaid balance of said loans. One consequence of that suit was a stipulation and written agreement between the Bank and Bellaire, dated August 18, 1955, which provided, in part, as follows:

"(2) Bellaire Pipeline Contractors, a Texas corporation, agrees to and hereby does sell, transfer, assign and set over unto West Texas State Bank, plaintiff above named, all of its right, title and interest in and to the accounts receivable, equipment and all other property of whatsoever kind or nature, both real and personal, including any and all amounts now due from the Mountain States Telephone & Telegraph Company, defendant, and Cable Construction Company, now owned by it, for and in consideration of the payment to it of the sum of Twenty thousand and No/100 Dollars ($20,000.00), in cash, the receipt of which is hereby acknowledged, and of the indemnity

agreement, covenants and releases hereinafter referred to."

"(3) West Texas State Bank agrees to indemnify Bellaire Pipeline Contractors, a Texas corporation, *and to pay any and all debts, liabilities and other obligations, including corporation income taxes, if any, of Bellaire Pipeline Contractors,* * * incurred or due and owing by the Bellaire Pipeline Contractors, * *, as of the date of this instrument * * *." (Emphasis added)

On January 15, 1957, the District Director of the Internal Revenue, Austin, Texas, made an assessment against Bellaire for withholding taxes for the second quarter of 1955 in the amount of $6,708.-31, inclusive of penalties and interest.[1] Such taxes are as yet unpaid.

On January 14, 1963, the Government filed suit in the United States District Court for the Northern District of Texas against the Bank to collect said taxes on the theory that it was a third party beneficiary under the aforementioned contract. Jurisdiction was alleged under 28 U.S.C.A. § 1345 and 26 U.S.C.A. § 7402(a).[2] The Bank answered, inter alia, that the Government's claim is barred by the four-year Texas statute of limitations, 16A Vernon's Texas Civil Statutes Annotated (Revised), Art. 5527.[3]

---

1. 
| $3,592.63 | Withheld income tax |
| 1,413.58 | Accrued and withheld old age benefit taxes |
| 1,251.55 | Penalties |
| 450.55 | Interest to January 15, 1957 |

$6,708.31  Total

2. 28 U.S.C.A. § 1345:
"Except as otherwise provided by Act of Congress, the district courts shall have original jurisdiction of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress. June 25, 1948, c. 646, 62 Stat. 933."
26 U.S.C.A. § 7402(a):
"Jurisdiction of district courts
(a) To issue orders, processes, and judgments.—The district courts of the United States at the instance of the United States shall have such jurisdic-

tion to make and issue in civil actions, writs and orders of injunction, and of *ne exeat republica,* orders appointing receivers, and such other orders and processes, and to render such judgments and decrees as may be necessary or appropriate for the enforcement of the internal revenue laws. The remedies hereby provided are in addition to and not exclusive of any and all other remedies of the United States in such courts or otherwise to enforce such laws."

3. "Art. 5527. *What actions barred in four years.*
There shall be commenced and prosecuted within four years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:
1. Actions for debt where the indebtedness is evidenced by or founded upon any contract in writing."

Both parties made motions for summary judgment, accompanied by affidavits, pursuant to Rule 56 F.R.Civ.P., and the District Court rendered judgment for the Bank on the ground that the Texas statute of limitations constituted a bar. 233 F.Supp. 130.

On appeal, the Government contends (1) a state statute of limitations cannot bar the federal government from bringing a suit on contract when it is acting in its *sovereign capacity* to collect taxes; and (2) regardless of the foregoing, a state statute cannot bar a suit brought to recover taxes from a transferee pursuant to the provisions of 26 U.S.C.A. § 6901.[4] The Bank responds that the Government is not acting in its sovereign capacity to collect taxes, but rather in a proprietary capacity in attempting to enforce a contract, which makes it subject to the state statute. The Bank further contends, (1) appellant failed to state a claim upon which relief could be granted; (2) the transferee theory of liability asserted by the Government was not raised by the pleadings and thus cannot be argued on appeal; and (3) the District Director's assessment of tax liability was arbitrary.

In concluding that the Texas statute constituted a bar to the Government's suit, the District Court relied upon the holding in United States v. Scott (8 Cir. 1948) 167 F.2d 301. We conclude that reliance on *Scott* is improper and that it can be easily distinguished, both in law and fact, from the present case. In *Scott,* the defendant had assumed all of the taxpayer's debts, one of which was a fixed tax liability determined by the Board of Tax Appeals. The court held that in its suit to collect the debt pursuant to the contract the Government was not limited by the six-year *federal* statute of limitations applicable to the collection of taxes,[5] but rather the additional time allowed under Missouri law, applicable to such contracts, was available to the Government. In *Scott* the court evidently relied on United States v. John Barth Co., 279 U.S. 370, 49 S.Ct. 366, 73 L.Ed. 743 (1929), for the proposition that the Government may have a contractual right in addition to and separate from its statutory right to collect a tax, and that the running of the federal statute of limitations did not bar its greater or additional right under the contract. The court's statement that the Missouri statute of limitations was binding on the Government is dictum. The contract in *Scott* did not limit the Government; it allowed additional time in which to sue, which was in effect "an additional and special right."[6] To the extent, if any, our conclusions are in conflict with the holding in *Scott,* we decline to follow it.

In support of its contention that the Government is acting in a "proprietary"

---

4. 26 U.S.C.A. § 6901:
   "SEC. 6901. TRANSFERRED ASSETS.
   (a) *Method of Collection*—The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, paid, and collected in the same manner and subject to the same provisions and limitations as in the case of the taxes with respect to which the liabilities were incurred
   \* \* \* \* \*
   (2) *Other taxes.*—The liability, at law or in equity of a transferee of property of any person liable in respect of any tax imposed by this title (other than a tax imposed by subtitle A or B), but only if such liability arises on the liquidation of a partnership or corporation, or on a reorganization within the meaning of section 368(a)."

5. 26 U.S.C.A. § 6502 establishes the federal statute of limitations on tax proceedings:
   "SEC. 6502. COLLECTION AFTER ASSESSMENT.
   (a) *Length of Period.*—Where the assessment of any tax imposed by this title has been made within the period of limitation properly applicable thereto, such tax may be collected by levy or by a proceeding in court, but only if the levy is made or the proceeding begun—(1) within 6 years after the assessment of the tax, or \* \* \*."

6. For some examples of preferential treatment of the sovereign as compared to ordinary suitors see United States v. 93 Court Corp., et al. (2 Cir. 1965) 350 F. 2d 386, especially footnotes 4 and 5.

as opposed to a "governmental" capacity and should be treated as an ordinary citizen, subject to the state statute, the Bank also relies on United States v. National Bank of New York, 28 F.Supp. 144 (S.D. N.Y.1939). In that case, the United States contended that the endorsement of the payee of one of its checks was a forgery and that defendant was liable on its guarantee of prior endorsements. The court concluded that when the Government *abandoned* its position of sovereignty and entered the domain of the marketplace to sue on an endorsement as any citizen can do, it was subject to the defense of laches. We do not consider this district court case as binding authority; even so, it is easily distinguishable.

■ In the instant case the Government has not abandoned its governmental position, since this is a suit to collect taxes. To the contrary, it is acting within its sovereign capacity and is immune from time restrictions imposed by a state statute. We disagree with the conclusion reached by the trial court and reverse. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940); Davis v. Corona Coal Co., 265 U.S. 219, 44 S.Ct. 552, 68 L.Ed. 987 (1924); United States v. 93 Court Corporation, et al. (2 Cir. 1965) 350 F.2d 386; United States v. Parker House Sausage Company (6 Cir. 1965) 344 F.2d 787; United States v. Borin (5 Cir. 1954) 209 F.2d 145; United States v. Dobbins (5 Cir. 1944) 139 F.2d 169.

The Government's second theory is that the Bank is a transferee at law because it assumed all of the debts of taxpayer for a valuable consideration including most, if not all, of the taxpayer's assets. In such circumstances, it is argued that such a contract creates transferee liability as a matter of law, and that its suit may be brought within six years after assessment against the transferor. The trial court seemed to recognize the principle relied on by the Government but concluded, " * * * there seems to be some measure of probability that a transferor and transferee theory might have been tenable, but that is moot now and will be left to its own uncertainty."

■ In view of the fact that the liability of the Bank as a transferee at law was mentioned by the trial court, is argued on this appeal, and will in all likelihood arise in further proceedings in the district court, we consider it appropriate to discuss the subject, although the pleadings did not clearly raise the issue in the trial court. We believe there was sufficient exposure of the transfer theory in the Government's complaint by way of reference to the written agreement between the Bank and Bellaire, to-wit, "Bellaire Pipeline Contractors, Inc. * * * agrees to * * * *transfer* * * * all of its property * * * " etc., to defeat the Bank's contention that the Government is attempting to "collect on an entirely different theory" than originally used. (Emphasis added).[7] See Maxwell v. United States (5 Cir. 1964) 334 F.2d 181, 184. We leave to the district court the task of determining whether the Bank actually is a transferee as contemplated by the law, but suggest that the Government be granted leave to amend its complaint pursuant to Rule 15 F.R.Civ.P. because it is clear that "justice so requires."

We consider it unnecessary to deal with any of the other contentions presented.

Reversed and remanded for further proceedings not inconsistent with this opinion.

Reversed and remanded.

7. The Government's cross-motion for summary judgment also relied on the contract between the Bank and Bellaire.